THE BOYNTON FURNACE COMPANY, Appellant, v. MESSNER & COMPANY.

**Warranty:** PLEA AND PROOF. Plaintiff was the maker of a furnace. Defendant was a plumber, and became the agent of plaintiff. He ordered boilers of plaintiff, and put them in for purchasers according to plaintiff's directions. They proved not to be as warranted, and to be unsuitable for the purposes for which they were intended, and were subsequently taken out and stored for plaintiff. In a suit brought for the contract price of the boilers, defendant pleaded that the same were of no use to him. *Held*, it was proper to admit testimony that the boilers were of no value to defendant, though no formal tender of the boilers was made by defendant to plaintiff.

**Practice.** Where an answer and counter-claim entitled the defendant to the opening and closing, an amendment offered to the petition, which changes neither issue nor burden of proof, may be ordered filed as an amendment to reply.

*Appeal from Cedar Rapids Superior Court.*—HON. T. M. GIBERSON, Judge.

THURSDAY, FEBRUARY 6, 1896.

ACTION at law to recover the alleged contract price of a hot water boiler and heater, and for certain attachments thereto. There was a defense setting up a breach of warranty of the articles sold, and for damages on account thereof, as well as for damages for breach of warranty for another hot water boiler sold by the plaintiff to the defendants. There was a trial

by jury. Verdict and judgment for the defendants. Plaintiff appeals.—*Affirmed.*

*U. C. Blake* and *John M. Redmond* for appellant.

*C. J. Deacon* and *M. P. Smith* for appellees.

Rothrock, C. J.—I. The pleadings are somewhat confused, owing to the fact that by the answer and counter-claim, the defendants claimed damages for the breach of warranty of two boilers. There was a reply to the counter-claim, and upon these pleadings the court determined that the defendants were entitled to open and close the case in the introduction of the evidence, and in the arguments to the jury. Thereupon the plaintiff offered to amend its petition. Defendants objected thereto, and the court sustained the objection, but permitted the amendment to be filed as an amendment to the reply. Complaint is made of this ruling. We think it was right. The amendment proposed did not change the issues, nor the burden of proof, and it was properly ordered to be filed as an amendment to the reply.

II. It appears from the record and evidence in the case, that the plaintiff is engaged in the manufacture and sale of hot air furnaces and hot water heaters, and its western trade is supplied from the city of Chicago. In 1891, the plaintiff, by its agents, solicitors, and managers, was engaged in introducing its hot water boilers in this state. The defendants were plumbers, and steam and gas fitters, at the city of Cedar Rapids. One Douglas, an agent of the plaintiff's, appeared at the place of business of the defendants, to secure them as agents, to handle the hot water heaters for the plaintiff. At that time the defendants had an application to furnish a steam-heating plant for Moses Bloom, at Iowa

City; and Douglas and one of the defendants went to that place, and induced Bloom to allow them to put in the hot water system manufactured by the plaintiff. The contract by Bloom was made with the defendants, and the plaintiff shipped the boiler to the defendants, at Iowa City. This was in February, 1891. The boiler was placed in the building, and pipes and radiators were attached, but the plant was a failure. It did not heat the building properly. Before the failure became a demonstration, the defendants found another customer, in the person of a keeper of an hotel, and they ordered a hot water boiler to heat that building. That plant was set up and put in operation, and it did not heat the hotel. It is claimed that the hot water boiler was warranted to be a perfect and complete heater, and the evidence fully sustains that claim. And there was evidence from which the jury might well find that the boiler ordered for the hotel, was under the same inducement and warranty that was made when the boiler was ordered for Bloom's building. The plaintiff claimed that all matters of difference were settled by the parties, in December, 1891. This was denied by the defendants. Special interrogatories were submitted to the jury at the instance of the plaintiff, and the answers thereto, were to the effect that there was no settlement, and that all of the pipes, radiators, and all of the connections, were properly placed in the Bloom building, and that there was a fair test of the plant in that building. These findings were supported by the evidence. Indeed, the facts show that the boiler was placed in the Bloom building in accord with the directions of the agent, Douglas. And there was evidence which sustained the verdict, in so far as the placing of the boiler in the hotel was concerned. It is true, Douglas was not present when that building was examined, but there was evidence that the defendants

followed the directions and specifications prescribed by Douglas, as to the size of the boiler, and the necessary radiation, and the general construction of the plant. It was not contemplated by the parties that an agent of the plaintiff would be present to direct the work and prepare specifications for each plant.

III. The winter was over before the defendants abandoned their efforts to make the boilers in the two buildings heat them, in compliance with the contracts. Further efforts were made, at the beginning of the next winter, without success; and the boilers were removed, and left in the buildings, or on the premises, where they were stored, and, so far as appears, they are still there. A steam-heating boiler was put into the Bloom Building, and the pipes and radiators were connected with the steam boiler. Another make of heater was put into the hotel. The defendants claimed quite a large sum as damages for labor, loss of time, and expenses, in attempting to make the plants do proper service. They paid for the boiler, put in the Bloom Building, before becoming satisfied that it would not furnish sufficient heat. The jury returned a verdict, for the defendants, for three hundred and ninety-eight dollars, and twenty-five cents. By the special findings, it appeared that part of this amount was made up, by allowing for the expense of putting in and taking out the boilers. The court being of opinion that these items were not legitimate damages, the defendants remitted that much of the verdict, and judgment was entered for one hundred and ninety-six dollars, and seventy-five cents, and costs.

IV. The defendants, in their answer and counter-claim, alleged that the boilers were not accepted by them, and that they were of no value to them. The court permitted the defendants to testify that

the boilers were of no value to them.   This evidence was objected to, and exceptions were taken, and, it is claimed, that the rulings were erroneous.

It is true, that the defendants did not make a formal tender of the boilers, to the plaintiff.   But, under the averments of the petition, and in view of the acts of the parties, and the relation they sustained to each other, the rule that the measure of damages is the difference between the actual, and market value of the boilers, is not the only evidence applicable to that question.   Much of the work in putting in these plants, and the efforts to make them comply with the contracts, was under the personal direction and supervision of the plaintiff's agents, and the relation of the parties was quite different from that of an ordinary sale of personal property.   Under these circumstances, and in view of the fact, that the defendants make no claim to the boilers, and have stored them for the plaintiff, we think there is no error in the ruling of the court.

Other objections are made, to the rulings of the court, which do not require special consideration. We find no error in the case, prejudicial to the appellant, and it is AFFIRMED.